UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RONNIE GIBSON, SR.,
as Personal Representative for
the ESTATE OF RONNIE GIBSON, JR.,

Plaintiff,

v.

NICHOLAS ABATE, WILLIAM DOBSON
DAVID UHL, COLLAN QUINN,
ARIN DUNNE, CHALRES GALLOWAY
KATIE CASWELL and MONROE COUNTY,
jointly and severally,

Defendants.

Case No.

Hon.:
Magistrate Judge:

KEVIN S. ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
ERNST LAW FIRM, PLC
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
kevin@ernstlawplc.com
hannah@ernstlawplc.com

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Ronnie Gibson, Sr., as the Personal Representative for the Estate of Ronnie Gibson, Jr., states as follows in support of his Complaint:

## INTRODUCTION

1. This is a 42 USC § 1983 civil rights action brought under the Michigan Wrongful Death Act (hereafter, the "Act") in which Plaintiff seeks relief and all damages that flow from Defendants' multiple violations of his decedent's rights, privileges and immunities as secured by the Fourteenth Amendment to the United States.

2. Ronnie Gibson, Jr. died on or about October 4, 2020, as a result of Defendants' deliberate indifference to his serious medical needs while he was incarcerated at Monroe County Jail located in Monroe, Michigan.

3. At all times during Ronnie Gibson Jr.'s pretrial detention at the Monroe County Jail beginning on or about October 1, 2020, until his death on or about October 4, 2020, Defendants owed Ronnie Gibson Jr. a duty to provide medical care for his obvious and serious medical needs to which Defendants were deliberately indifferent and a duty to protect him from the clear and known danger of suicide, which Defendants ignored, and from which they failed to protect him. Defendants' deliberate indifference to Plaintiff's serious medical needs and violations of the decedent's due process rights proximately caused his death and the consequent damages to his Estate.

4. Plaintiff Ronnie Gibson, Sr. was the father of Ronnie Gibson, Jr., whose death on October 4, 2020 was a proximate result of Defendants' deliberately

indifferent and unconstitutional failure to respond to his serious medical needs while he was a pretrial detainee at the Monroe County Jail.

5. On behalf of the Estate of Ronnie Gibson, Jr., as the duly appointed Personal Representative thereof, Plaintiff Ronnie Gibson, Sr. seeks all relief appropriate and allowable resulting from the constitutional violations Defendants inflicted upon his decedent.

6. Plaintiff seeks damages for the Estate of Ronnie Gibson, Jr. pursuant to 42 USC Sections 1983 and 1988 and state law, attorney fees and costs, and on behalf of all persons entitled to claim damages because of the death of Plaintiff's decedent, including the decedent's spouse, children, descendants, parents, grandparents, brothers and sisters, if any, pursuant to the Michigan Wrongful Death Act, MCL 600.2922 and any further relief the Court deems proper.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as this matter concerns a federal question under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

8. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391. The events giving rise to Plaintiffs' claims occurred in the Eastern District of Michigan.

## PARTIES

9. Plaintiff RONNIE GIBSON, SR. is the duly appointed Personal Representative of the Estate of Ronnie Gibson, Jr. He is a resident of the County of Monroe, State of Michigan.

10. Defendant COUNTY OF MONROE (hereafter "COUNTY") is a Municipal Corporation authorized by the laws of the State of Michigan to operate the Monroe County Jail. As part of its responsibilities and services, the COUNTY also operates a law enforcement agency (the Monroe County Sheriff's Department) that, among other duties and responsibilities, operates and controls the COUNTY'S Jail System, including the Monroe County Jail. At all relevant times herein, the COUNTY acted under color of law and pursuant to certain customs, policies, and practices, which were the moving force behind the constitutional violations asserted herein.

11. Defendant Nicholas Abate was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. He at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He is sued in his individual capacity.

12. Defendant Katie Caswell was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of her employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. She at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. She is sued in her individual capacity.

13. Defendant Arin Dunne was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his or her employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. He or she at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He or she is sued in their individual capacity.

14. Defendant Charles Galloway was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his employment and authority, and pursuant to the COUNTY'S customs, policies, and

practices. He at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He is sued in his individual capacity.

15. Defendant William Dobson was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. He at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He is sued in his individual capacity.

16. Defendant David Uhl was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. He at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He is sued in his individual capacity.

17. Defendant Collan Quinn was and/or is at all times relevant hereto a Monroe County Jail Corrections Officer who is an employee and agent of Defendant COUNTY, acting under color of law, within the scope of his employment and authority, and pursuant to the COUNTY'S customs, policies, and practices. He at all times had a duty not to act with deliberate indifference to Mr. Gibson's serious medical needs. Defendant observed Mr. Gibson as an employee of the county and failed to provide the obvious medical care he needed. He is sued in his individual capacity.

**FACTUAL ALLEGATIONS REGARDING THE DEATH OF RONNIE GIBSON, JR.**

18. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

19. Ronnie Gibson, Jr. was detained pretrial at the Monroe County Jail on an assault charge from on or about October 1, 2020, until the time of his tragic death on October 4, 2020. He was 40 years old at the time of his death.

20. Ronnie Gibson, Jr. had a known history of mental health illness, which included, but was not limited to, bipolar disorder and suicidal ideation.

21. Ronnie Gibson, Jr. had been detained at Monroe County Jail on previous occasions, had previously been on suicide watch at Monroe County Jail, and had previously been transferred from Monroe County Jail to Promedica Hospital for

mental health treatment based on mental health issues including suicidal ideation he had while an inmate at Monroe County Jail.

22. On October 1, 2020 at approximately 3:30pm, Ronnie Gibson, Jr. was arrested at his father's house and taken to the Monroe County Jail.

23. At approximately 4:10pm on October 1, 2020, Ronnie Gibson, Jr. was booked by Defendant Abate, who did not conduct preliminary questioning based on his known mental health history including but not limited to suicidal ideation.

24. Sometime thereafter, Ronnie Gibson, Jr. was put in an intake holding cell in Monroe County Jail, which could be viewed from the officer's station. The intake holding cell had a security camera with high-definition surveillance, which was monitored by Defendants.

25. Ronnie Gibson, Jr. was not placed in a location free from things which could be – and ultimately were – used by Ronnie Gibson, Jr., a suicidal individual to cause serious injury and death to himself.

26. Despite knowledge of Ronnie Gibson Jr.'s mental health issues, including but not limited to bipolar disorder and suicidal ideations with known treatment for those mental health issues while incarcerated at Monroe County Jail, Defendants did not put Ronnie Gibson, Jr. on a suicide watch.

27. Between approximately 3:30pm and 7:35pm on October 1, 2020, Ronnie Gibson, Jr. made approximately 8 calls. During those calls, Ronnie Gibson, Jr. can

be heard threatening suicide multiple times. Specifically, Ronnie Gibson, Jr. stated, inter alia, "I just want to die," "I'll kill myself right now," "I just wish I die right now," "You won't have to worry about me ever again," "If I am still here," and "This will be the last time we ever talk."

28. Between 3:30pm and 7:35pm on October 1, 2020, Defendants Dobson, Quinn, Uhl, Dunne, Galloway, Abate, and Caswell observed Ronnie Gibson, Jr. on CCTV and performed headcounts and security checks, observing Ronnie Gibson, Jr. in the holding cell.

29. At no time did any Defendant undertake any action either to inquire of or to question Mr. Gibson Jr. regarding his emotional and/or psychological condition or to ask him about his threats of suicide, seek medical or psychological attention for him and/or to increase surveillance/monitoring of him.

30. At approximately 7:45pm, Defendant Uhl entered the booking office and began monitoring the CCTV footage with Defendant Dunne.

31. While monitoring the CCTV footage, Defendants Uhl and Dunne observed Ronnie Gibson hanging from a phone cord in the intake holding cell at approximately 7:47pm.

32. At approximately 7:48pm, Defendant Uhl called for backup and Defendant Dunne opened the cell door. They lifted Ronnie Gibson, Jr. and removed the phone cord from around his neck.

33. Defendants Dobson, Caswell, Quinn and Galloway arrived thereafter.

34. At approximately 7:58pm, Monroe Fire and Rescue arrived to transport Ronnie Gibson, Jr. to Promedica Hospital, where he was then airlifted to Promedica Toledo, where he ultimately died of anoxic encephalopathy due to hanging on October 4, 2020.

35. Upon review of the CCTV footage, according to a narrative report by Detective Jeffrey Hooper, the video footage began at approximately 7:23pm, where Ronnie Gibson, Jr. can be seen pacing around the cell. He can be seen picking up the phone several times and looking toward the officer's station. At 7:35pm, Detective Hooper saw that Ronnie Gibson, Jr. wrapped the telephone receiver and cord around his neck and sat down. Approximately 50 seconds into sitting while holding the receiver, Ronnie Gibson, Jr.'s hands fell to his sides and he began to mildly convulse. While convulsing, his feet were no longer under him. He was not discovered by Defendants until approximately 7:48pm.

36. Based on the aforementioned facts – individually and collectively – these Defendants were on actual notice that Ronnie Gibson, Jr. manifested a serious medical need that required immediate attention, care and treatment.

37. Nevertheless, Defendants, acting pursuant to Defendant COUNTY's customs, policies and/or practices, and without the necessary training, deliberately disregarded Ronnie Gibson, Jr.'s serious medical needs. For example, not one of

the individual Defendants undertook any action either to inquire of or to question Mr. Gibson Jr. regarding his emotional and/or psychological condition or to ask him about his threats of suicide, seek medical or psychological attention for him and/or to increase surveillance/monitoring of him. Further, though his cell was visible from the officer's station, he was being monitored on the CCTV, and headcounts and security checks were being performed by Defendants, Defendants did not undertake any precautionary measures to adequately protect Ronnie Gibson, Jr. from the dire psychological emergency in which he found himself and did not find him until he was no longer breathing, approximately 13 minutes after he hanged himself with the phone cord.

38. The failure to treat Ronnie Gibson, Jr. and failure to act in a timely manner caused his death, pain and suffering.

39. Defendants had a constitutional duty to help, assist, and/or treat Ronnie Gibson, Jr. for his suicide risk, as they had actual notice of his dire medical condition.

40. At all times relevant, Defendants completely failed to obtain the necessary help and/or treatment for Ronnie Gibson, Jr. despite his obvious need for treatment.

41. At all times relevant, Ronnie Gibson, Jr. could have been and should have been timely provided with the treatment as described above, and his life could have been and should have been preserved.

42. Ronnie Gibson, Jr. endured conscious pain and suffering before he ultimately succumbed to anoxic encephalopathy due to Defendants' deliberate indifference to his serious medical needs.

43. At the time of Ronnie Gibson, Jr.'s suicide attempt and subsequent death, the individual Defendants and the Defendant County were well aware that custodial detention and jailing present a highly foreseeable and heightened risk of suicide for those who threaten suicide and who fit the profile and history of inmates such as Ronnie Gibson, Jr. and including Plaintiff's Decedent Ronnie Gibson, Jr.

44. Defendants were on actual and particular notice that the Plaintiff's Decedent Ronnie Gibson, Jr. presented a known risk of suicide, for all the reasons stated above, including, as well, his reported history of bipolar disorder and suicidal ideation.

45. Despite the aforementioned knowledge of the risk of suicide to Ronnie Gibson, Jr. within the Monroe County Jail, the COUNTY, up to and including October 1, 2020, failed to take adequate steps to address and reduce that risk.

46. This systemic lack of an adequate response and/or procedure constituted a custom, practice and/or policy that affirmatively failed to address the serious medical needs of suicidal inmates such as Plaintiff's Decedent Ronnie Gibson, Jr.

47. As a result of the of the customs, policies and practices, all of the clearly necessary precautions, as set forth above, were deliberately disregarded and/or

ignored.

48. Further, the Defendant COUNTY and its Sheriff's Department failed to train, discipline, and/or supervise Monroe County Jail staff, including the individually named Defendants herein, in accordance with the following principles:

a. That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately;

b. That there be an immediate, urgent, predictable, consistent and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail, especially those with known risks as described above;

c. That when, as here, there is an immediate, significant and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

d. That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide and that surveillance be acted upon immediately;

e. That through supervision, training and discipline, threats of suicide or actions in furtherance of suicide must be recorded and addressed immediately, consistently and predictably so that none could be

ignored, disregarded, procrastinated or responded to in deleterious manner by Monroe County Jail staff;

f. That the failure by Ottawa County agents, officials, and employees, including Defendants above, to comply with any of these principles, as set forth in subparagraphs (a)–(f) above, would result in consistent disciplinary actions from Defendant COUNTY, as well as responsive supervision and training.

49. All of the customs, policies and practices described and identified above, as well as the customs, practices, and policies of the COUNTY and its Sheriff's Department, set forth below, were a moving force in the Defendants' failure to respond to Ronnie Gibson, Jr.'s serious medical needs, which contributed to and/or enabled his death.

50. Plaintiff's decedent is survived by the following: his mother, his father, his brother, and two children.

**COUNT I**
**42 U.S.C. §1983**
**VIOLATION OF THE FOURTEENTH AMENDMENT**

51. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

52. Decedent was entitled to all rights, privileges and immunities accorded to all incarcerated citizens of the State of Michigan and the United States.

53. At all times relevant, Defendants were acting within the course and scope of their employment with the Monroe County Jail and were acting under color of state law with the authority granted to them as corrections officers and/or managers and/or shift supervisors.

54. Pursuant to the Fourteenth Amendment of the United States Constitution, Gibson, Jr. had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of the Monroe County Jail.

55. At all relevant times, Mr. Gibson, Jr. had a right to adequate and sufficient medical care and/or treatment for his obvious and serious medical conditions so that his life would be preserved and he would not be subjected to needless unjustified and preventable pain, suffering.

56. At all times, Defendants, with malice, recklessness and/or deliberate indifference, individually and collectively, as set forth in detail herein, were deliberately indifferent to pretrial detainee Ronnie Gibson, Jr.'s known serious medical needs.

57. The actions and/or omissions of the various Defendants constitute a deliberate indifference to the serious medical needs of Ronnie Gibson, Jr. and demonstrated a reckless, willful and/or wanton disregard for the health and safety of Mr. Gibson in violation of the Fourteenth Amendment.

58. As a direct and proximate result of the actions and/or omissions of the various Defendants, Ronnie Gibson, Jr. suffered great physical pain, emotional distress, discomfort, humiliation, degradation, and suffering and ultimately death.

59. As a direct and proximate result of the acts and/or omissions of the various Defendants, the estate has sustained damages and is entitled to compensation for conscious pain and suffering of the deceased the initial act of deliberate indifference to a substantial risk of serious harm until his death; funeral, and burial expenses and his survivors, as defined by the Wrongful Death Act, are entitled to damages for the loss of financial support and the loss of the society and companionship of the deceased

60. Ronnie Gibson, Jr. is survived by one or more of the following persons eligible to recover damages under the Wrongful Death Act: his mother, father, brother, and children.

61. By the aforementioned actions and/or omissions, Defendants have deprived Ronnie Gibson, Jr. of the rights secured by the Fourteenth Amendment to the United States Constitution.

WHEREFORE Plaintiff respectfully requests compensatory non-economic and economic damages, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. §§1983 and 1988 and/or the laws of the State of Michigan, including, but not limited to the Michigan Wrongful

Death Act, punitive damages, reasonable attorney fees, costs and interest, and such other relief as appears reasonable and just under the circumstances.

**COUNT II**
***Monell* Claim**
**(As to Defendant Monroe County)**

62. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

63. Ronnie Gibson, Jr. was subjected to a deprivation of a clearly established, constitutionally protected right and privilege secured by the Fourteenth Amendment to the Constitution of the United States.

64. The deprivations proximately caused by the individual Defendants resulted from the customs, policies, and established practices of Monroe County and by its failure to properly train its employees.

65. The COUNTY implemented and encouraged policies, practices, and customs, as set forth above, with deliberate indifference to the rights of inmates within the custody of the Ottawa County Jail, specifically with regard to Ronnie Gibson Jr.'s constitutional right to due process in the form of care and treatment for his known serious medical needs, all of which were a proximate cause and/or a moving force in the violations of Ronnie Gibson Jr.'s constitutional rights.

66. During the time Ronnie Gibson, Jr. was incarcerated at Monroe County Jail, Defendant Monroe County's policy makers and other decision-making officials acted with deliberate indifference to the medical needs of Ronnie Gibson, Jr.

67. During the time Ronnie Gibson, Jr. was incarcerated at Monroe County Jail, Defendant Monroe County's policy makers and other decision-making officials adopted a custom, policy, and/or practice of ignoring substantial risks of serious harm to inmates in favor of cursory treatment, no treatment at all or deliberately choosing less efficacious treatment because it was more convenient and less expensive.

68. During the time Ronnie Gibson, Jr. was incarcerated at Monroe County Jail, Defendant Monroe County's policy makers and other decision-making officials failed to properly train and supervise its employees to monitor and address inmates' serious medical conditions and provide proper diagnostics and treatment. Defendant County was on notice of the acts and misconduct of its employees and its failure to properly train and supervise its employees or contractors amounted to deliberate indifference to the rights of Ronnie Gibson, Jr.

69. As a direct and proximal result of the unconstitutional acts and omissions of Defendant Monroe County, Ronnie Gibson, Jr. sustained the serious injuries herein described.

WHEREFORE Plaintiff respectfully requests a judgment awarding compensatory non-economic and economic damages, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. §§ 1983 and 1988 and the laws of the State of Michigan including the Michigan Wrongful Death Act, punitive damages, reasonable attorney fees, costs and interest, and such other relief as appears reasonable and just under the circumstances.

Respectfully Submitted,

/s/ *Hannah R. Fielstra*
KEVIN ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
ERNST LAW FIRM, PLC
645 Griswold, Suite 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
kevin@ernstlawplc.com
hannah@ ernstlawplc.com

Dated: September 27, 2023

**JURY DEMAND**

Plaintiff hereby requests a trial by jury in the above-captioned matter.

Respectfully Submitted,

/s/ *Hannah R. Fielstra*
KEVIN ERNST (P44223)
HANNAH R. FIELSTRA (P82101)
ERNST LAW FIRM, PLC
645 Griswold, Suite 4100

Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
kevin@ernstlawplc.com
hannah@ ernstlawplc.com

Dated: September 27, 2023